```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
 NEBRASKALAND, INC.,

                Plaintiff,

      -against-                              MEMORANDUM AND ORDER

 SUNOCO, INC. (R&M); BBZZ EQUITIES,          Civil Action No.
 INC.; 880 GARRISON CORP.; RICHARD           10-CV-1091(DGT)
 FINKELSTEIN; ARSHAD QAZI; and DIARAM
 KALICHARAN,

                Defendants.

----------------------------------X
```

Trager, J:

This case arises out of an alleged scheme by defendants to defraud plaintiff Nebraskaland, Inc. ("Nebraskaland" or "plaintiff") by issuing invoices for fuel to Nebraskaland that did not include agreed-to discounts, and then bribing defendant Diaram Kalicharan ("Kali"), an employee of Nebraskaland, to approve those invoices. Kali moves to dismiss plaintiff's faithless servant claim against him on the grounds that New York's faithless service doctrine violates the Thirteenth and Fourteenth Amendments of the United States Constitution, the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law ("NYLL") § 193, and local, state and federal tax and retirement laws. Kali also moves for a declaratory judgment declaring New York's faithless servant

1

doctrine null and void.  Plaintiff separately moves to dismiss Kali's counter-claim for declaratory judgment.  For the reasons stated below, Kali's motion to dismiss is denied and plaintiff's motion to dismiss is granted.[1]

**Background**

Nebraskaland operates a fleet of delivery trucks that it uses to distribute meat and other food products to supermarkets and other suppliers throughout New York and the surrounding areas.  (Plaintiff's Amended Complaint ("AC") ¶¶ 12-13.)  In order to reduce its fuel expenses, Nebraskaland entered into agreements with certain retail fuel suppliers and gas stations to provide discounts.  One such agreement, which Nebraskaland and Sunoco entered into prior to March 2006, was a "Fleet Agreement" whereby Sunoco gave Nebraskaland a discount of 3% off Nebraskaland's total monthly Sunoco fuel bill.  (Id. ¶¶ 20-21.)

In or around March 2006, Nebraskaland entered into a contract with BBZZ Equities, 880 Garrison and Sunoco that was to

---

[1] Both Kali and plaintiff move to dismiss additional claims or counter-claims in their respective papers.  On November 19, 2010, Kali moved for expedited consideration of his motion to dismiss plaintiff's faithless servant claim.  Because consideration of Kali's and plaintiff's additional arguments would delay resolution of Kali's motion to dismiss plaintiff's faithless servant claim, those arguments (with the exception of plaintiff's related motion to dismiss Kali's declaratory judgment claim) are not addressed here.

provide Nebraskaland with an additional discount on all fuel purchased at the BBZZ/Garrison Station. (Id. ¶ 24.) Under the terms of the contract, Nebraskaland agreed to use the BBZZ/Garrison Station as its preferred fuel supplier in the Bronx in exchange for a discount off the pump price for fuel purchased at the BBZZ/Garrison Station. (Id. ¶ 26.) According to the terms of the contract, Nebraskaland was entitled to receive a credit of approximately one dollar per gallon of fuel purchased at the BBZZ/Garrison Station (the "Contract Credit"),[2] and the Contract Credit was to be reflected on each monthly fuel bill that Sunoco sent to Nebraskaland. (Id. ¶¶ 22, 27.)

Between approximately September 1994 and September 2009, Kali was employed by Nebraskaland. At all relevant times during this period, he held the position of Vice President of Operations for Nebraskaland. (AC ¶ 9, Kali's First Amended Answer ("FAA") ¶ 3, 35.) The parties dispute whether he was employed in an executive or managerial position, although they agree that Kali was responsible for reviewing the fuel invoices sent by vendors and comparing those invoices with the receipts submitted by drivers in the truck fleet that he supervised. (AC

---

[2] The amount of the credit was set at $1 per gallon, but the contract allowed the amount to fluctuate based on changes in the pump price of fuel. (AC ¶ 28.)

3

¶ 14, FAA ¶ 7.)  In or around September 2009, Kali's employment with Nebraskaland ended.[3]  (FAA ¶ 47.)

Plaintiff alleges that, starting in March 2006 and going through at least September 2009, defendants Richard Finkelstein ("Finkelstein"), the President and owner of BBZZ Equities, and Arshad Qazi ("Qazi"), the President and owner of 880 Garrison Corp., engaged in a scheme whereby Sunoco would issue invoices to Nebraskaland that did not reflect the agreed-upon Contract Credit.  (AC ¶ 32, 33.)  As part of the scheme, plaintiff alleges that Finkelstein and Qazi bribed Kali to approve the invoices for payment by Nebraskaland.  (AC ¶¶ 34-38.)  Kali denies that he was ever bribed or that he ever received cash payments from either Finkelstein or Qazi.  (FAA ¶ 18.)

Plaintiff alleges that, pursuant to the contract, Nebraskaland purchased in excess of half a million gallons of fuel from the BBZZ/Garrison Station from March 2006 through October 2009 — the period of time in which defendants are alleged to have participated in the scheme to defraud plaintiff. Plaintiff further alleges that it paid Kali in excess of $404,000 in compensation during that period of time.

---

[3] The parties dispute whether Kali resigned from his position at Nebraskaland or was terminated, but this factual dispute has no significance to the instant motions to dismiss.

4

**Procedural History**

On February 16, 2010, plaintiff filed this action in New York State Supreme Court. On March 10, 2010, defendant Kali removed the case to federal court pursuant to 28 U.S.C. § 1441(a) on the grounds that plaintiff's complaint involves a federal question which shares a common nucleus of operative facts with plaintiff's state law claims. (D.E. 1.) On April 16, 2010, plaintiff filed an Amended Complaint claiming, <u>inter alia</u>, that it is entitled to recover all compensation paid to Kali during the time he participated in the scheme to defraud plaintiff based on New York's faithless servant doctrine. (AC ¶¶ 120-123, 134.) In response to plaintiff's Amended Complaint, Kali filed his First Amended Answer on April 22, 2010, in which he, <u>inter alia</u>, denied the factual underpinnings of plaintiff's faithless servant claim and asserted numerous affirmative defenses to the claim.

Kali now moves to dismiss plaintiff's faithless servant claim against him on the grounds that New York's faithless servant doctrine violates the Thirteenth and Fourteenth Amendments of the United States Constitution, the FLSA, the New York Minimum Wage Act, NYLL § 193, and local, state and federal tax and retirement laws. Kali also moves for declaratory judgment declaring New York's faithless servant doctrine null and void. Plaintiff separately moves to dismiss Kali's counter-

5

claim for declaratory judgment on the grounds that there is no case or controversy.

## Discussion

### (1)

### Kali's Motion to Dismiss Plaintiff's Faithless Servant Claim

Kali moves to dismiss plaintiff's faithless servant claim on the grounds that New York's faithless servant doctrine violates the Thirteenth and Fourteenth Amendments of the United States Constitution, the FLSA, the New York Minimum Wage Act, NYLL § 193, and local, state and federal tax and retirement laws such as the IRS Code and ERISA. Before this Court may consider the merits of Kali's motion, it must determine that the issue is ripe for adjudication. Although plaintiff does not raise the issue of ripeness in its Memorandum of Law in Opposition to Diaram Kalicharan's Motion to Dismiss, "because the ripeness doctrine is drawn both from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, a court can raise it sua sponte." Thomas v. City of New York, 143 F.3d 31, 34 (2d Cir. 1998).

**a. Ripeness**

The doctrine of ripeness encompasses two related, but distinct, inquiries: constitutional ripeness and prudential

ripeness. Constitutional ripeness has its source in the Case or Controversy requirement of Article III, and thereby serves as a limitation on the power of the judiciary. Thomas, 143 F.3d at 34. Prudential ripeness, on the other hand, "is a more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it." Id. It serves as "a tool that court may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary." Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003). As such, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998).

Plaintiff's complaint against Kali, which demands recovery of all compensation paid to Kali during the period of the alleged fraud under New York's faithless servant doctrine, clearly creates a "concrete dispute affecting cognizable current concerns of the parties sufficient to satisfy standing and constitutional ripeness." Ehrenfeld v. Mahfouz, 489 F.3d 542, 546 (2d Cir. 2007). However, the complaint alone is not necessarily sufficient to satisfy prudential ripeness.

The prudential ripeness inquiry involves a two pronged analysis requiring courts to "evaluate both the fitness of the

7

issues for judicial determination and the hardship to the parties of withholding court consideration." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)). As explained below, Kali's motion to dismiss plaintiff's faithless servant claim fails to satisfy either prong of the prudential ripeness inquiry.[4]

---

[4] Although some courts have held that, "[i]n the context of a facial challenge, a purely legal claim is presumptively ripe for judicial review because it does not require a developed factual record," see, e.g., Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1308 (11th Cir. 2009), Kali does not appear to bring a facial challenge to New York's faithless servant doctrine. At no point in Kali's Memorandum of Law in Support of his Motion to Dismiss ("Kali's Mem.") does he argue that there are no set of circumstances under which the doctrine would be valid, which he would be required to demonstrate in order to prevail on a facial challenge. See United States v. Salerno, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid."); United States v. Rybicki, 354 F.3d 124, 130-31 (2d Cir. 2003) (en banc) (stating that a facial challenge outside the First Amendment context can succeed "only if [the statute] is unconstitutionally vague 'as applied' to all circumstances"); United States v. Sage, 92 F.3d 101, 106 (2d Cir. 1996) (noting that, to bring a facial challenge, the plaintiff must show that "no set of circumstances exists under which the [provision] would be valid" (internal quotation marks omitted)). Instead, Kali consistently argues that the remedy sought under the faithless servant claim against him would violate federal and state laws. (See, e.g., Kali's Mem. at 9 ("Unlike the repayment plan in Hudacs, the faithless servant claim against Kali specifically requires repayment of wages in direct violation of NYLL 193 . . . ."); id. at 12 ("Kali would be entitled to a minimum wage under 29 USC 206 or 29 CFR 541."); id. at 18 ("Kali is in effect being forced to give his labor to the employer for free and without pay.").) As such, his Motion to Dismiss is

8

### i. Fit for Judicial Review

Determining whether a claim is fit for judicial review "requires a weighing of the sensitivities of the issues presented and whether there exists a need for further factual development." Murphy, 402 F.3d at 347 (citing Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 581 (1985); see also N.Y. Civil Liberties Union v. Grandeau, 528 F.3d 122, 133 (2d Cir. 2008) (stating that a challenge is not fit for judicial review when it would "benefit from additional factual development"). This is particularly true when the challenge in question is constitutional in nature. Bronx Household of Faith v. Bd. of Educ., 492 F.3d 89, 114 (2d Cir. 2007) (Leval, J., concurring) ("The ripeness principles elaborated in the foregoing cases bear heightened importance when, as in the present case, the potentially unripe question presented for review is a constitutional question."). "[C]onstitutional challenges by defendants to a particular punishment 'are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine.'" United States v. Quinones, 313 F.3d 49 (2d Cir. 2002) (quoting Cheffer v. Reno, 55 F.3d 1517, 1523 (11th Cir. 1995); see also United States v. Agriprocessors, Inc., 08-cr-1324, 2009 WL

---

interpreted as bringing only an as-applied challenge to New York's faithless servant doctrine.

9

2255728, at *18 (N.D. Iowa July 27, 2009) ("[I]t would be premature for the court to rule as to the constitutionality of a possible sentence before trial.").

In this case, there are unresolved factual issues that could make it unnecessary for this Court to decide whether application of the faithless servant doctrine to Kali would violate the federal Constitution or state or federal statutory law. Most significantly, Kali denies plaintiff's allegations of bribery and asserts that there is no evidence supporting the allegations. (FAA ¶¶ 18, 65; see also D.E. 138 (11/12/10 Letter) ("[T]here is no legal or factual basis for this faithless servant claim." (emphasis added).) Resolution of this disputed factual issue could potentially dispose of plaintiff's faithless servant claim against Kali without having to decide whether New York's faithless servant doctrine violates state or federal law.

There are also unresolved factual disputes that will clarify the context of Kali's invalidity argument should it later become necessary to address the merits of the argument. For example, the parties dispute whether Kali was an officer, director or managerial employee of Nebraskaland. (Compare FAC ¶ 14 with FAA ¶ 7.) Resolution of this disputed factual issue could provide a more specific factual context in which to view the faithless servant claim, which is based on fiduciary duties

and agency principals that some courts have limited to officers, directors and key managerial personnel. See, e.g., Triton Constr. Co. v. E. Shore Elec. Servs., Inc., 3290-VCP, 2009 WL 1387115, at *9 (Del. Ch. May 18, 2009). Because of these disputed factual issues, Kali's motion is not fit for review at this time.

### ii. Hardship

As for the second prong of the prudential ripeness inquiry, Kali fails to show that he would suffer hardship if consideration of his motion to dismiss is delayed until after this Court has resolved all of the relevant factual questions. In order to determine whether a party would suffer hardship by withholding a decision on the issue in question, the Second Circuit has stated that courts are to "ask whether the challenged action creates a direct and immediate dilemma for the parties." Grandeau, 528 F.3d at 134. This inquiry is meant to determine whether the parties will "have constitutional rights undermined by the delay." Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003) (emphasis added).

Kali does not argue that any of his constitutional rights would be undermined by delaying decision on his motion to dismiss until the relevant facts are more clearly developed. Instead, Kali argues that he would be harmed by mounting

attorney's fees and an inability to settle the action – problems which he claims are exacerbated by the uncertainty of whether the faithless servant claim will be allowed to proceed. But mere delay is not a constitutional injury and does not constitute hardship for purposes of the prudential ripeness analysis. See D'Agostino v. Dinapoli, 1:09-cv-1347, 2010 WL 2925703, at *6 (N.D.N.Y. July 20, 2010) (finding that "delay, in and of itself" was not a hardship for prudential ripeness purposes).

Because this Court would benefit from additional fact-finding before deciding Kali's motion to dismiss plaintiff's faithless servant claim, and because Kali does not allege that he would suffer any constitutional harm by delaying consideration of his motion, Kali's motion to dismiss is not ripe for consideration at this time, and is therefore denied with leave to re-file after the relevant factual issues have been resolved.

**(2)**

**Plaintiff's Motion to Dismiss Kali's  
Motion for Declaratory Judgment**

Kali also moves for a declaratory judgment declaring New York's faithless servant doctrine null and void. Plaintiff opposes Kali's motion, and separately moves to dismiss Kali's counter-claim for declaratory judgment.

12

**a. Case or Controversy**

This Court's authority to grant a declaratory judgment derives from the Declaratory Judgment Act, which permits a court to enter declaratory relief only "[i]n a case of actual controversy," 28 U.S.C. § 2201(a), which has been interpreted as reflecting Article III's case or controversy requirement, see MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 125 (2007). A case or controversy exists when there is (1) a substantial controversy; (2) between parties having adverse legal interests; and (3) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. MedImmune, 549 U.S. at 127. Because there is no bright line rule for when an action satisfies the case or controversy requirement, id., "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree," Diamonds.net LLC v. Idex Online, Ltd., 590 F. Supp. 2d 593, 597 (S.D.N.Y. 2008) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

Although the test for establishing whether a case or controversy exists may be imprecise, it is clear that any declaratory judgment must at least have the potential to influence the behavior of one or more of the parties. As the Supreme Court explained in Hewitt v. Helms, the real value of a judicial pronouncement in a declaratory judgment suit, and what

13

makes such a pronouncement a proper judicial resolution of a case or controversy, is that it "affects the behavior of the defendant towards the plaintiff." 482 U.S. 755, 761 (1987). As such, when a declaratory judgment action has no potential to influence the behavior of the parties, the case or controversy requirement of § 2201(a) is not satisfied.

In this case, Kali does not seek to affect the behavior of any of the parties in the dispute. Instead, he merely wishes (1) to have "control of his declaratory judgment claim" so that he may litigate the validity of the faithless servant doctrine regardless of whether Nebraskaland withdraws its faithless servant claim against him, and (2) to recover attorney's fees under the FLSA and NYLL, which Kali claims he would be entitled to as a prevailing plaintiff, but not as a prevailing defendant. (Kali's Mem. of Law in Opp. to Nebraskaland's Mot. to Dismiss, at 23.) Neither argument satisfies the case or controversy requirement of § 2201(a).

Kali's first argument fails because the only case or controversy concerning the faithless servant doctrine involves plaintiff's claim for restitution against Kali of all compensation paid during the time he participated in the alleged scheme. If plaintiff were to withdraw its faithless servant claim, there would be no case or controversy to support Kali's declaratory judgment claim because Kali's employment at

Nebraskaland ceased in or around September 2009.  Because Kali is no longer employed by Nebraskaland, he cannot make out "a genuine claim of an injury or possibility of injury of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Armstrong v. Ward, 529 F.2d 1132, 1136 (2d Cir. 1976) (quoting Preiser v. Newkirk, 422 U.S. 395, 403 (1975)); cf. Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 406-09 (S.D.N.Y. 2002) (finding no "actual controversy" under the Declaratory Judgment Act because plaintiff's complaint was "grounded on a string of apprehensions and conjectures" that it would be held liable in a separate action).

Defendant's second argument also fails because a claim for attorney's fees cannot save a declaratory judgment claim that otherwise fails to state a case or controversy.  A claim for attorney's fees is separate from the merits of the action, Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988), and although a request for attorney's fees may survive under the court's equitable jurisdiction, it cannot revive a claim that the court would otherwise be without jurisdiction to hear. Cornucopia Inst. v. U.S. Dept. of Agric., 560 F.3d 673, 676-77 (7th Cir. 2009) (holding that plaintiff's request for attorney's fees did not save its claim from becoming moot).

Furthermore, even if Kali were to succeed on his claim for declaratory judgment, he would not be entitled to attorney's

fees under either the FLSA or the NYLL.  The FLSA allows an employee to recover attorney's fees against any employer who violates either the minimum wage provision or the maximum hours provision of the FLSA.  29 U.S.C. § 207.  Similarly, the NYLL allows an employee to recover attorney's fees "[i]n any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails."  NYLL § 198.  If Kali were to succeed on his declaratory judgment claim and this Court were to find the faithless servant doctrine is either preempted by the FLSA or is incompatible with the NYLL, defendant would retain his salary, making any claim that his employer, Nebraskaland, violated the wage provisions of either the FLSA or the NYLL entirely baseless.

Because plaintiff does not state an actual case or controversy as required by 28 U.S.C. § 2201(a), this Court does not have jurisdiction to consider his claim for declaratory judgment.

**b.   Discretion to Entertain a Request for Declaratory Relief**

Even if this Court had jurisdiction over Kali's declaratory judgment claim, it would still decline to exercise its discretion to entertain a request for declaratory judgment.

In order to determine whether a court should exercise its discretion to entertain a claim for declaratory judgment, it

16

must consider:  "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  Duane Reade, Inc. v. St. Paul Fire & Marines Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005).  In addition, a court may consider:  "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy."  Dow Jones & Co., 346 F.3d at 359-60.

In this case, the fact that plaintiff's underlying lawsuit "will necessarily settle the issues for which declaratory judgment is sought suggests that the declaratory judgment will serve no useful purpose."  Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010).  In addition, "there is a 'better or more effective remedy' than a declaratory judgment action – specifically, the underlying litigation itself."  Id.  Because a declaratory judgment action would serve no useful purpose in this case, this Court would decline to issue a declaratory judgment even if it had jurisdiction to consider Kali's declaratory judgment claim.

17

## Conclusion

For the foregoing reasons, Kali's motion to dismiss plaintiff's faithless servant claim is denied with leave to re-file and plaintiff's motion to dismiss Kali's counter-claim for declaratory judgment is granted.

Dated:   Brooklyn, New York
         December 7, 2010

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge