UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
NEBRASKALAND, INC.,

               Plaintiff,

-against-

SUNOCO, INC.; BBZZ EQUITIES, INC.;
880 GARRISON CORP.; RICHARD
FINKELSTEIN; ARSHAD QAZI; and
DIARAM KALICHARAN,

               Defendants.
----------------------------------------------------X

**REPORT &
RECOMMENDATION**
10 CV 1091 (RJD)

Plaintiff Nebraskaland, Inc. ("Nebraskaland") brings this suit against Sunoco, Inc. ("Sunoco"), BBZZ Equities, Inc. ("BBZZ"), Richard Finkelstein ("Finkelstein"), 880 Garrison Corp. ("880 Garrison"), Arshad Qazi ("Qazi"[1]), and Diaram Kalicharan ("Kali"), for claims arising out of an alleged scheme to defraud plaintiff by issuing invoices for fuel to plaintiff that did not include agreed-to discounts, and then allegedly bribing Kali, an employee of Nebraskaland, to approve those invoices, without the discounts.

On November 3, 2010, Sunoco filed a motion to dismiss plaintiff's second cause of action against it, contending that New York law precludes negligent misrepresentation claims seeking purely economic damages. On May 9, 2011, after settlement discussions seemed unlikely to prove successful, the district court referred Sunoco's motion, as well as the pending motions to dismiss filed by other parties in this action, to the undersigned for a Report and Recommendation. The Court issued an Order on June 1, 2011, directing the parties to provide supplemental briefing regarding the applicability of the economic loss doctrine underlying

---

[1] The parties alternatively refer to Qazi as "Kazi."

Sunoco's motion. Pursuant to the Court's Order, plaintiff filed a Supplemental Memorandum of Law on June 10, 2011, and Sunoco filed a Supplemental Brief on June 15, 2011. After considering the arguments set forth in the parties' papers, the Court respectfully recommends that Sunoco's motion to dismiss be denied.

## FACTUAL BACKGROUND

Nebraskaland operates a fleet of delivery trucks that it uses to distribute meat and other food products to supermarkets and other suppliers throughout New York and the surrounding areas. (Am. Compl.[2] ¶¶ 12-13). In order to reduce its fuel expenses, Nebraskaland entered into agreements with certain retail fuel suppliers and gas stations to provide discounts. One such agreement, which Nebraskaland and Sunoco Inc. ("Sunoco") entered into prior to March 2006, was a "Fleet Agreement" whereby Sunoco agreed to give Nebraskaland a discount of 3% off Nebraskaland's total monthly Sunoco fuel bill. (Id. ¶¶ 20-21).

In or around March 2006, Nebraskaland entered into a contract (the "Contract") with BBZZ, 880 Garrison and Sunoco that was to provide Nebraskaland with an additional discount on all fuel purchased at the gas station located at 880 Garrison Avenue, Bronx, New York ("BBZZ/Garrison Station").[3] (Id. ¶ 24). Under the terms of the Contract, Nebraskaland agreed to

---

[2] Citations to "Am. Compl." refer to the Amended Complaint, which was filed on April 16, 2010.

[3] According to the BBZZ defendants, the gas station is operated by 880 Garrison on land owned by BBZZ, subject to a written lease between 880 Garrison and BBZZ. (BBZZ Defs.' Mem. in Supp. Mot. to Dismiss ("BBZZ Mem.") at 4; BBZZ Answer, filed on May 3, 2010 ("BBZZ Ans.") ¶¶ 215-216.)

2

use the BBZZ/Garrison Station as its preferred fuel supplier in the Bronx in exchange for a discount off the pump price for fuel purchased at the BBZZ/Garrison Station. (Id. ¶ 26). According to the terms of the Contract, Nebraskaland was entitled to receive a credit of approximately one dollar per gallon of fuel purchased at the BBZZ/Garrison Station (the "Contract Credit"),[4] and the Contract Credit was to be reflected on each monthly fuel bill that Sunoco sent to Nebraskaland. (Id. ¶¶ 22, 27).

Plaintiff alleges that, beginning in March 2006 and continuing at least until September 2009, Finkelstein, the President and owner of BBZZ Equities, and Qazi, the President and owner of 880 Garrison, engaged in a scheme whereby Sunoco would issue invoices to Nebraskaland that did not reflect the agreed-upon Contract Credit. (Am. Compl. ¶¶ 32, 33). As part of the scheme, plaintiff alleges that Finkelstein and Qazi bribed Kali, an employee of Nebraskaland, to approve the invoices for payment by Nebraskaland.[5] (Id. ¶¶ 34-38). Kali denies that he was ever bribed or that he ever received cash payments from either Finkelstein or Qazi. (Kali Ans.[6] ¶ 18).

---

[4] The amount of the credit was set at $1 per gallon, but the Contract allowed the amount of the Contract Credit to fluctuate based on changes in the pump price of fuel. (Am. Compl. ¶ 28.)

[5] The contours of the scheme are unclear, but plaintiff describes it in its Memorandum in Opposition to the Motion to Dismiss: "[S]hortly after the 2006 Contract Credit agreement had been entered into, Finkelstein and Qazi, or their companies, began to transmit large sums of cash to Kali, whom the defendants knew was responsible for processing the Sunoco invoices for payment . . . . At the same time, the invoices from Sunoco no longer reflected the Contract Credit . . . but lesser amounts secretly agreed to among Kali, and Finkelstein and Qazi on behalf of themselves and Sunoco. Kali reviewed and approved each invoice from Sunoco for payment." (Opp. at 2).

[6] Citations to "Kali Answer" refer to Kali's First Amended Answer, which was filed on April 22, 2010.

3

Plaintiff alleges that, pursuant to the Contract, Nebraskaland purchased in excess of half a million gallons of fuel from the BBZZ/Garrison Station from March 2006 through October 2009. (Am. Compl. ¶ 31). Plaintiff further alleges that it paid Kali in excess of $404,000 in compensation between March 2006 and October 2009 – the period of time in which Kali was alleged to have participated in the scheme to defraud plaintiff. (Id. ¶ 123).

By the time plaintiff discovered the alleged scheme in October 2009, Kali was no longer an employee at Nebraskaland, having either resigned or been terminated for reasons unrelated to the alleged Contract Credit scheme.

With respect to its negligent misrepresentation claim, plaintiff alleges that "Finkelstein and Qazi caused Sunoco to issue and mail to Nebraskaland invoices that did not reflect the agreed upon Contract Credit but a lesser amount." (Id. ¶ 33). Plaintiff further alleges that "Sunoco . . . owed a duty of care to Nebraskaland arising out of [its] ability to control the calculating and processing of the discounts, including the Contract Credit, due Nebraskaland." (Id. ¶ 55). According to plaintiff, Sunoco knew that Nebraskaland would rely on its invoices, but despite this knowledge and its alleged duty to Nebraskaland, Sunoco "failed to advise Nebraskaland that it was no longer receiving the full amount of the agreed upon Contract Credit." (Id. ¶¶ 55-58).

## DISCUSSION

A.  Motion to Dismiss

When deciding a motion to dismiss a complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must consider whether the complaint

4

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. at 1949. Under this pleading standard, labels, conclusions, and mere recitation of the elements of a cause of action will not suffice. Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. at 555. Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. Ultimately, when the well-pleaded facts allow no more than an inference of a "mere possibility of misconduct" and the plaintiff has only alleged, rather than shown, an entitlement to relief, the federal pleading standard of Rule 8(a)(2) has not been satisfied. Ashcroft v. Iqbal, 129 S. Ct. at 1950. However, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996).

The Second Circuit has stated that in deciding a Rule 12(b)(6) motion, a court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993); see also Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007). In addition, the court must give plaintiff's claims "a liberal construction." Johnson v. New York City Transit Auth., 639 F. Supp. 887, 891 (E.D.N.Y. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)), aff'd in part and vacated in part on other grounds, 823 F.2d 31 (2d Cir. 1987). However, the court is not

5

required to accept the truth of legal conclusions couched as factual allegations. See Papasan v. Allain, 478 U.S. 265, 286 (1986).

B.  Negligent Misrepresentation and the Economic Loss Doctrine

In New York, plaintiffs claiming negligent misrepresentation must plead the following five elements: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that it should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to her detriment." Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20 (2d Cir. 2000). "Liability for negligent misrepresentation may be imposed 'only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" Amusement Indus., Inc. v. Stern, No. 07 Civ. 11586, 2011 WL 867274, at *11 (S.D.N.Y. Mar. 11, 2011) (quoting Kimmell v. Schaefer, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996)).

In determining whether a special relationship and duty exists, courts consider three factors: "'whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 215 (S.D.N.Y. 2007) (quoting Suez Equity Investors, L.P. v. Toronto-Dominion

Bank, 250 F.3d 87, 103 (2d Cir. 2001)). Generally, "[a] simple commercial relationship . . . does not constitute the kind of special relationship necessary for a negligent misrepresentation claim." Id. (citing Dimon, Inc. v. Folium, Inc., 48 F. Supp. 2d 359, 373 (S.D.N.Y. 1999)). As the court in Silvers v. State noted, "the arm's-length business relationship . . . is not generally considered to be of the sort of a confidential or fiduciary nature that would support a cause of action for negligent misrepresentation." Silvers v. State, 68 A.D.3d 668, 669, 893 N.Y.S.2d 12, 14 (1st Dep't 2009); see also Aerolineas Galapagos, S.A. v. Sundowner Alexandria, LLC, 74 A.D.3d 652, 653, 905 N.Y.S.2d 152 (1st Dep't 2010) (holding that "the parties to the agreement dealt at arm's length, so the close relationship required to support the negligent misrepresentation claim was lacking").

Sunoco argues that plaintiff's negligent misrepresentation claim should be dismissed because "New York law holds that a negligence action seeking recovery for economic loss will not lie." (Def.'s Mem.[7] at 2) (quoting County of Suffolk v. Long Island Lighting Co., 728 F.2d 52, 62 (2d Cir. 1984)). The so-called "economic loss rule" is meant to "keep contract law from drowning in a sea of tort"[8] by "bar[ring] actions in tort when an action in contract is available."

---

[7]Citations to "Def.'s Mem." refer to Sunoco's Memorandum in Support of its Motion to Dismiss, which was filed on November 3, 2010.

[8]A clear explanation of the purposes of the rule can be found in Carmania Corp., N.V. v. Hambrecht Terrell Intern., 705 F. Supp. 936 (S.D.N.Y. 1989): "The law of contracts is meant to facilitate voluntary economic exchange. Plaintiffs who sue successfully for breach of contract are entitled to damages providing them with the benefit of the bargains they and the defendants chose to strike–i.e., to be placed in the positions they would have enjoyed had the parties' expectations panned out. The law of torts, in contrast, has different goals: to deter people from inflicting harm when they behave unreasonably, and to compensate those injured by restoring them to the state they occupied before they suffered harm. New York law preserves these distinctions by restricting plaintiffs who have suffered 'economic loss,' but not personal or property injury, to an action for the benefits of their bargains. If the damages suffered are of the

Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. at 220 (internal quotation marks omitted).

The Second Circuit has carved out an exception to the economic loss doctrine in cases of professional malpractice. See Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d at 18 (noting that "the better course is to recognize that the rule allows . . . recovery [of purely economic damages] in the limited class of cases involving liability for the violation of a professional duty"). In cases involving professional malpractice by lawyers, see, e.g., Prudential Insurance Co. of America v. Dewey Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 385, 605 N.E.2d 318, 322, 590 N.Y.S.2d 831, 836 (1992), or accountants, see, e.g., Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co., 79 N.Y.2d 695, 702, 597 N.E.2d 1080, 1083, 586 N.Y.S.2d 87, 90 (1992), courts have relied on the existence of a special relationship that justified an exception to the economic loss doctrine. See also Ossining Union Free School Dist. v. Anderson LaRocca Anderson, 73 N.Y.2d 417, 419, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989) (noting that engineers may be liable for negligent misrepresentations even to plaintiffs not in contract with them).

New York courts also "recognize[] exceptions to the economic loss rule where the defendant has a duty independent of contractual obligations or where defendant's conduct causes damage to property not subject to the contract." Rochester-Genesee Regional Trans. Auth. v. Cummins, No. 09 CV 6370, 2010 WL 2998768, at *8 (W.D.N.Y. July 28, 2010). In William Wrigley Jr. Co. v. Waters, for example, plaintiff alleged that the defendant trademark agents negligently performed their contractual duties, thereby leaving thousands of trademarks

---

type remediable in contract, a plaintiff may not recover in tort." Id. at 938.

unprotected. 890 F.2d 594, 602 (2d Cir. 1989). In finding that plaintiff could recover the costs incurred as a result of defendants' negligence, the Second Circuit noted that it "is well settled under New York law that negligent performance of a contract may give rise to a claim sounding in tort as well as one for breach of contract." Id.

Some New York courts have also recognized a limited exception to the economic loss doctrine "for contracts for the provision of services." Shema Kolainu-Hear Our Voices v. Providersoft, LLC, No. 09 CV 3140, 2010 WL 2075921, at *10 (E.D.N.Y. May 21, 2010) (citing cases). However, this exception has not been applied uniformly. Other courts have held that the economic loss doctrine bars claims of negligent representation, even when the relevant contract was for the provision of services. For instance, in Cherny v. Emigrant Bank, a client sued Emigrant Bank for failing to notify its clients of a security breach which resulted in the disclosure of email addresses. 604 F. Supp. 2d 605, 607 (S.D.N.Y. 2009). The court dismissed the negligent misrepresentation claim, noting that "under New York's economic loss rule, a plaintiff asserting a claim of negligent misrepresentation who has not suffered any personal or property damage is limited to an action in contract." Id. at 609.

Moreover, when services are rendered incidental to a contract for the sale of goods, courts still classify the contract as a whole as one for the sale of goods, and therefore not subject to the service contract exception. In American Telephone and Telegraph Co. v. New York City Human Resources Administration, for example, the district court reviewed the applicability of the economic loss doctrine to a contract for the purchase of communications equipment which also included installation services, finding that "[t]he installation services that Northern Telecom undertook as part of the contract were merely incidental to the sale of the [equipment] to the

City." 833 F. Supp. 962, 983 (S.D.N.Y. 1993).

C. Analysis

In its motion, Sunoco argues that plaintiff's claim of negligent misrepresentation is barred by the economic loss doctrine. (Def.'s Mem. at 2). Plaintiff, however, contends that the economic loss doctrine does not bar its claim "because Nebraskaland seeks damages under this cause of action that would not be recoverable under a breach of contract claim." (Opp.[9] at 1). According to Nebraskaland,[10] it is seeking more than just the benefit of its bargain with Sunoco; instead, "Nebraskaland seeks to recover the wages and other compensation paid to Kali, which it would not have paid if Sunoco had not negligently represented the moneys due for fuel in its false invoices, which were approved by Kali." (Id.)

Plaintiff contends that "[e]ven if the economic loss doctrine ostensibly applied, Nebraskaland's damages would be an exception under a negligent misrepresentation equivalent to the independent duty exception since Sunoco's duty not to deceive Nebraskaland . . . was

---

[9]Citations to "Opp." refer to plaintiff's Memorandum in Opposition to the Motion to Dismiss, which was filed on November 3, 2010.

[10]Plaintiff also makes a passing reference to the "imprecis[ion]" of the terms "personal or property injury" when applied to business enterprises. (Id. at 3). To conclude that economic loss is not a "personal injury" to a business, plaintiff contends, "would be an unsatisfactory imposition of a rote phrase while ignoring the factual reality and the purpose behind the rule, namely, to prevent a plaintiff from seeking contract damages through tort claims." (Id.) Sunoco argues that "describing an injury to business as personal is as oxymoronic as the phrase 'jumbo shrimp.'" (Reply at 2). Putting aside the dubious classification of "jumbo shrimp" as an oxymoron, the Court concurs, and, without any citations of authority to the contrary from plaintiff, declines to reclassify the damages sought by plaintiff as "personal injuries."

independent from Sunoco's duty to provide the diesel fuel itself." (Pl.'s Supp.[11] Mem. at 4). Plaintiff argues that "the independent duty exception with respect to negligent [misrepresentation] claims arises when work is negligently performed under a service contract." (Id.) It is unclear, however, how a contract for the sale of diesel fuel could be characterized as a contract for services. "The distinction between goods contracts and service contracts turns on whether the transaction, *taken as a whole*, is 'deemed to be a sale of goods, and thus falls within U.C.C. article 2,' or is 'deemed to be predominantly service oriented . . . .'" Shema Kolainu-Hear Our Voices v. Providersoft, LLC, 2010 WL 2075921, at *10 (emphasis added). Here, based on the arguments presented in the parties' briefs, the Contract, taken as a whole, appears to revolve around the sale of diesel fuel; the preparation of the invoices and the calculation of the Contract Credit is ancillary to the sale of the fuel. Plaintiff has not sufficiently alleged facts from which to conclude otherwise. Accordingly, the independent duty exception does not apply to plaintiff's claim for negligent misrepresentation.

Similarly, plaintiff has failed to allege facts sufficient to establish the existence of a "special relationship" between plaintiff and Sunoco. Although plaintiff alleges in the Amended Complaint that "Sunoco . . . owed a duty of care to Nebraskaland arising out of their ability to control the calculating and processing of the discounts . . . due Nebraskaland" (Am. Compl. ¶ 55), plaintiff fails to allege facts showing that Sunoco had any relevant expertise or specialized knowledge upon which Nebraskaland relied, other than the fact that Sunoco knew the information necessary to calculate the Contract Credit; "the mere fact that a defendant possesses

---

[11]Citations to "Pl.'s Supp. Mem." refer to plaintiff's Supplemental Memorandum of Law in Opposition to Sunoco's Motion to Dismiss, which was filed on June 10, 2011.

certain documentation relating to a transaction is not enough to meet the 'special expertise' element." Amusement Indus., Inc. v. Stern, 2011 WL 867274, at *12 (citing MBIA Ins. Co. v. GMAC Mortg. LLC, 914 N.Y.S.2d 604, 611 (N.Y. Sup. Ct. 2010)). "[C]ourts have not found specialized knowledge where the alleged area of expertise involves the particulars of the defendant's business." MBIA Ins. Co. v. GMAC Mortg., LLC, 914 N.Y.S.2d at 611. The "expertise" alleged by plaintiff is no more than knowledge of the relevant prices of gasoline, which is not comparable to the type of expertise held by attorneys, accountants, or other professionals, for whom courts have found the existence of a special relationship.

Nebraskaland also contends that New York courts have held that negligent misrepresentation claims can cause purely economic injury, and, therefore, "[i]t would be absurd to conclude that negligent misrepresentation cases that 'produce only economic injury' can state a cause of action, but are universally barred under the economic loss doctrine." (Pl.'s Supp. Mem. at 3). However, plaintiff appears to create a contradiction where none exists: while it is true that *in most cases* the economic loss doctrine bars claims for "purely economic damages," and that negligent misrepresentation claims have been found to produce "only economic injury," New York courts have recognized a limited number of exceptions to the economic loss doctrine. (See discussion supra at 6-8). The exceptions to the economic loss doctrine therefore remove any contradiction between the doctrine and claims of negligent misrepresentation.

Moreover, the two cases cited by plaintiff in support of this contention are of questionable relevance. In both cases, the parties were not in contract with each other, and the courts merely established that a contract between the parties was not necessary to support a negligent misrepresentation claim. In Ossining Union Free School District v. Anderson LaRocca

Anderson, the Court of Appeals held that although the litigants were not in privity of contract, they had a special relationship giving rise to an independent duty, and therefore a claim of negligent misrepresentation was not necessarily foreclosed. 73 N.Y.2d 417, 419, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989). Similarly, in Travelers Casualty and Surety Co. v. Dormitory Authority-State of New York, the district court found that privity of contract was not absolutely necessary to maintain a claim of negligent misrepresentation, but nonetheless dismissed the claim, finding that the plaintiff had failed to show that there was a sufficient relationship between the parties. 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010).

Having carefully considered the respective parties' arguments, the Court finds that plaintiff has failed to identify an exception to the economic loss doctrine, and, therefore, its claim of negligent misrepresentation is barred by the economic loss doctrine. Accordingly, the Court respectfully recommends that Sunoco's motion to dismiss plaintiff's second cause of action, sounding in negligent misrepresentation, be granted.

## CONCLUSION

The Court finds that plaintiff's claim is barred by the economic loss doctrine. The Court respectfully recommends that Sunoco's motion to dismiss be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
  July 13, 2011

/s/ Cheryl Pollak
Cheryl L. Pollak
United States Magistrate Judge